FINCANNON et al. v. FIRST NAT. BANK of BLUEJACKET et al.

No. 18458. Opinion Filed May 8, 1928.

Rehearing Denied Nov. 13, 1928.

Vern. E. Thompson and Marshall W. Hinch, for plaintiffs in error.

Jesse L. Ballard and Richard L. Wheatley, for defendants in error.

HEFNER, J. This cause grew out of an attempted merger of the First National Bank and the Bluejacket State Bank of Bluejacket, Okla. The stockholders of both banks were desirous of making a merger, and in order to bring about such merger in a just and equitable manner without increasing the capital stock of the Bluejacket

State Bank, which was $10,000, the First National Bank proposed to sell a sufficient amount of its assets to the Bluejacket State Bank to enable the Bluejacket State Bank to issue its stock in the merged bank to respective stockholders of the First National Bank in the sum of $7,142.85 in proportion to the number of shares held by each stockholder on the date of the merger.

It was the intention of the merged bank to create a surplus fund of $5,000 with bills receivable, cash, or acceptable securities, of which amount the Bluejacket State Bank agreed to contribute two-sevenths and the First National Bank of Bluejacket to contribute five-sevenths of the amount.

It was agreed that no notes would be taken from the stockholders' liquidating account and placed in the note case of the Bluejacket State Bank without the consent of the active officers of said bank. A similar account also was kept for the benefit of the old stockholders of the Bluejacket State Bank and the collection and liquidation of such assets should be upon the same terms as those held by the First National Bank for the benefit of its stockholders.

It was further agreed that separate accounts would be kept of each stockholders' liquidating fund, and that in the event any note placed in the note case of the consolidated bank by either the First National Bank or the Bluejacket State Bank should prove to be a loss within twelve months from the date of such consolidation, the Bluejacket State Bank should have authority to charge said note to the respective liquidating account responsible for such loss.

While the merger contract contained many other provisions, we do not deem it necessary to further set them out.

Upon completion of the preliminary plans for the merger, the Bank Commissioner of Oklahoma was notified of such intention, and on the 29th day of April, 1925, an assistant Bank Commissioner went to Bluejacket and assisted in perfecting the merger of the two banks.

While the negotiations to bring about the merger of the banks were being carried on, it was ascertained that it would be necessary for the First National Bank, in order for the assets it put into the merger to be equal to the liabilities thereof, to raise $12,586.96 in cash. This amount was raised by the First National Bank before the merger by assessment of the stockholders of that bank.

Upon merger the capital stock of the Bluejacket State Bank was not changed, but it had no surplus fund, and at that time a surplus fund of $5,000 was created, the First National Bank paying five-sevenths of the amount and the Bluejacket State Bank two-sevenths of the amount.

The merger became effective on April 29, 1925, and a general banking business was carried on by the Bluejacket State Bank, under its name and under the management of the new officers, until November 4, 1926, which was a period of about one year and seven months. Upon the merger, the First National Bank ceased its operation as a bank and proceeded to close its business.

After the merger, from time to time, the bank was visited and examined by the State Bank Commissioner's representatives, who at all times maintained the same supervision over the affairs of this bank as was maintained over the other banks in the state.

About a year after the merger had gone into effect, G. W. Fincannon and others, minority stockholders of the Bluejacket State Bank, as plaintiffs, brought suit in which the agreement for the merger of the two banks was attacked on the following grounds:

"First. That said agreement was never in truth or in fact executed by the Bluejacket State Bank.

"Second. That the agreement was neither signed nor delivered by the president of the bank nor the seal of the bank placed thereon by and in the manner prescribed by law, and by the by-laws of the bank.

"Third. That the agreement for the merger was signed by J. H. L. Staples, not for the Bluejacket State Bank, but in his individual capacity and not as an officer having power or authority under the by-laws of the bank or the laws of the state to execute a binding contract for and on behalf of the bank.

"Fourth. That the agreement was executed without notice or authority of plaintiffs.

"Fifth. That such agreement is ultra vires, against public policy, contrary to law, void and without binding force or effect."

On the trial of the case, the merger was set aside and judgment was entered substantially as follows:

"First. G. W. Fincannon, J. H. L. Staples, C. R. Spradlin, John Horton, and Ben Horton, were restored to office as directors of Bluejacket State Bank.

"Second. G. W. Fincannon and C. R. Spradlin were restored and reinvested with offices of president and cashier, respectively, of Bluejacket State Bank.

"Third. The agreement of April 15, 1925, evidencing merger of certain assets and liabilities of the First National Bank and the Bluejacket State Bank, respectively, was canceled.

"Fourth. Officers and directors of Bluejacket State Bank holding such offices at time of merger were reinvested with possession, management, and operation of the bank.

"Fifth. The Bluejacket State Bank was restored to custody and possession of property belonging to it which had been put into the merger.

"Sixth. All stock issued in the merged bank canceled, and shares of stock of all stockholders of Bluejacket State Bank restored to former status.

"Seventh. Referee appointed and accounting ordered and directed."

No appeal was prosecuted from this judgment, and the court, on its own motion, appointed Mr. John A. Wise, an experienced banker, as referee. The referee made a thorough investigation and, after taking much evidence, made a report of his findings of fact and conclusions, and the court in all respects adopted the same and entered judgment accordingly. Not being satisfied with the accounting, the plaintiffs have appealed. They contend this is not a case for an accounting, and the contract having been held void, the court should have left all parties where it found them. They further contend that the defendants were guilty of conversion.

Bluejacket is a small town and the banks found it was not profitable for both of them to continue in business and undertook a merger, which was accomplished under the supervision and direction of the Banking Department of the state of Oklahoma. After the merger had been in operation for about 19 months, the court held that the merger was illegal and ordered an accounting. We do not think, under these facts, the doctrine of conversion is applicable. Neither do we think the facts justify the contention that all parties should be left where they were found at the time of judgment. We think the facts justify the placing of all parties, in so far as is possible, in the same position they were in before the merger was undertaken. This is what the referee undertook to do, and the trial court adopted in every respect the findings and conclusions of the referee.

The report of the referee is very lengthy, but a portion thereof is as follows:

"The referee finds that at the time of the merger of the two banks certain stockholders of the First National Bank of Bluejacket,

Okla., were called upon to pay the assessment upon their stock, and certain stockholders did actually pay in $10,714.29, in money, upon the call so made upon the stockholders of the First National Bank. That C. C. Jenkins individually paid in $1,872.67, which last-named amount was necessary to make the assets of the First National Bank equal to the liabilities of the First National Bank transferred in the merger; the sum of $10,714.29 above mentioned, the referee finds that the said Bluejacket State Bank should now pay to these stockholders of the First National Bank of Bluejacket, Okla., from whom the sum was collected, in the amount set opposite the names of each, and finds that said sum of $10,714.29 so ordered refunded to the persons and amounts contributed by each is as follows: * * *

"There are other expenses which the Bluejacket State Bank contends should be charged against the First National Bank, such as interest on time deposits, county deposits, Indian funds, and open accounts and salaries. The referee as to those claims last above named feels, after investigating the entire business, that the Bluejacket State Bank, as it stands today, is in considerably better condition than when it was merged; that its deposits are larger and its income greater, and its earning capacity greater, all directly resulting from the merging of the assets of the First National Bank of Bluejacket, Okla., with those of the Bluejacket State Bank; the referee feels that this has given the Bluejacket State Bank greater advantages and offsets the whole claim last above mentioned for interest on deposits and salaries, and for that reason the referee finds that the claims last mentioned should be denied as being offset or more than offset by the advantages gained by the Bluejacket State Bank."

The findings of the referee, under our statute, have the effect of a special verdict. We have examined the record and the evidence and think the evidence clearly supports the findings of the referee, and the judgment of the court is affirmed.

All the Justices concur.